**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **AARON POYNTON** | * | |
| 1408 Stockton Road | | |
| Joppa, MD 21085 | * | |
| | | |
| *Plaintiff*, | * | |
| | | |
| v. | * | |
| | | |
| **BONNY DEMPSEY** | * | |
| 4624 Asbury Place NW | | |
| Washington, DC 20016 | * | **CIVIL NO.: 1:23-cv-448** |
| | | |
| and | * | |
| | | |
| **MAD DEVELOPMENT, LLC** | * | |
| 4624 Asbury Place NW | | |
| Washington, DC 20016 | * | |
| | | |
| <u>**SERVE ON**</u>: | * | |
| Russell S. Drazin, | | |
| Resident Agent | * | |
| 4400 Jennifer Street, NW | | |
| Washington, DC 20015 | * | |
| | | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

Plaintiff Aaron Poynton ("Plaintiff" or "Mr. Poynton"), by and through his undersigned counsel, Stephen B. Stern, Jonathan P. Kagan, Veronica J. Mina, and Kagan Stern Marinello & Beard, LLC, hereby files this Complaint against Defendants Bonny Dempsey ("Mrs. Dempsey") and MAD Development, LLC ("MAD Development" or "Company") (collectively, "Defendants"). In support, Plaintiff states as follows:

## THE PARTIES

1. Plaintiff Mr. Poynton is a citizen of Maryland who resides in Harford County, Maryland.

2. Defendant Mrs. Dempsey is a citizen of Washington, D.C. who resides in the District of Columbia.

3. Defendant MAD Development is a District of Columbia limited liability company with a principal place of business located at 4624 Asbury Place NW, Washington, D.C. 20016. Defendant MAD Development transacts business in Washington, D.C. and has, upon information and belief, one sole individual member, Mrs. Dempsey, who is a resident of Washington, D.C., and ran the business primarily from her home in D.C.

4. At all times relevant to the facts and circumstances set forth in this Complaint, Mrs. Dempsey was the authorized owner, agent, officer, and/or employee of MAD Development, and acting within her authorized scope as an agent for the Company. MAD Development is responsible for all the acts and omissions of Mrs. Dempsey related to Plaintiff, acting within her scope as an authorized agent of the Company.

## JURISDICTION AND VENUE

5. At all times relevant to the events set forth in this Complaint, the majority of the facts and circumstances regarding Defendants' actions occurred in Washington, D.C.

6. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant Mrs. Dempsey is a resident of Washington, D.C. and Defendant MAD Development's (which is owned by Defendant Dempsey) principal place of business is in Washington, D.C. Venue is also proper

in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims set forth in this Complaint occurred in Washington, D.C. and the real property related to the subject of this action is situated in Washington, D.C.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

8. In or around 2016, Plaintiff was approached by Mrs. Dempsey's husband, Patrick Dempsey ("Mr. Dempsey") about his wife's real estate business, whereby Mrs. Dempsey would purchase residential real estate in Washington, D.C. that needed improvement and would subsequently remodel the property and return it to the market to be sold at a profit.

9. Thereafter, beginning in 2016, Mr. Poynton and Defendants entered a lender-borrower arrangement, whereby Mr. Poynton would agree to loan Defendants a certain sum of money, which would be used to remodel a certain residential property that Defendants had purchased. Each of Mr. Poynton's loans were supported by an executed deed of trust which was filed in land records and thus secured by the property purchased by Defendants Mr. Poynton, as the "Lender" (as termed by the deed of trusts), would loan a certain sum for that property to be used by Defendants to remodel and sell the property, at which time Mr. Poynton would receive the principal sum of the loan amount plus 10% interest.

10. On occasion, Mr. Poynton agreed to be paid his 10% interest after the sale of a property, and then agreed with Defendants to roll over the principal sum loaned to a new property, which was supported by an executed deed of trust. Upon rolling over the principal sum to a new property, Defendants would customarily provide Mr. Poynton with a new contract for the remodel, which identified the property that Defendants had purchased and the terms of the loan.

11. Mr. Poynton and Defendants worked together under a borrower-lender arrangement on several properties from 2016 and onward, which had previously been successful.

12. On or about November 20, 2020, Defendants had successfully remodeled and sold certain property located at 3129 38th Street, N.W., Washington, D.C. ("Property"), to which Mr. Poynton had loaned them $100,000.00 under a Note supported by an executed Deed of Trust for the Property. *See* **Exhibit 1** (3129 38th St., N.W. Note and Deed of Trust dated August 5, 2020); **Exhibit 2** (3129 38th St., N.W. Deed dated December 3, 2020).

13. As had been done previously on various occasions, Mrs. Dempsey proposed that Mr. Poynton reloan (i.e., roll over) the principal loan amount of $100,000.00 into another of her properties with the same terms and conditions that had previously been agreed to and documented between the parties in the past. Mrs. Dempsey conveyed to Mr. Poynton that she owned another property that she was renovating to be sold by her in or around January 2021, and needed his funds to finish the project and sell the property.

14. To induce Mr. Poynton to reloan the principal loan amount of $100,000.00 into this other property, Mrs. Dempsey described the real estate market as "crazy strong," however, she concealed the fact that she was in financial distress at the time with this property and maybe other properties. *See* **Exhibit 3** (Text Message from B. Dempsey to A. Poynton).

15. Mr. Poynton was paid the 10% interest on his loan pursuant to the Note after the sale of the Property and then, based on Mrs. Dempsey's representation, he agreed to roll the principal loan amount of $100,000.00 into another property that Mrs. Dempsey purportedly owned and was renovating to be sold by her in January 2021.

16. Upon agreeing to lend the $100,000.00 for Defendants' other property that they were renovating for sale, Mrs. Dempsey told Mr. Poynton that a new promissory note and deed of trust would be sent to him to execute as had been done in the past. *See* **Exhibit 4** (Text Message

from B. Dempsey to A. Poynton) (Mrs. Dempsey texts ". . . will get check out tomorrow with new paperwork.").

17. After several weeks had passed, the new promissory note and deed of trust for the other purported property that Mrs. Dempsey owned and was renovating had not arrived. Thereafter, Mr. Poynton contacted Mr. Dempsey on several occasions to inquire about the status of the new promissory note and deed of trust, to which Mrs. Dempsey would repeatedly respond that the new promissory note and deed of trust would be forthcoming. *See* **Exhibit 5** (Text Messages between A. Poynton and B. Dempsey dated December 4, 2020, December 13, 2020, and April 10, 2021) (Mrs. Dempsey texts ". . . I'll get it out tomorrow. . . ."). Despite Mrs. Dempsey's assurances, Mr. Poynton never received a new promissory note or deed of trust for Mrs. Dempsey's other property.

18. On or about April 10, 2021, approximately three months after Mrs. Dempsey told Mr. Poynton that the alleged other property was to be sold, Mr. Poynton was notified by Mrs. Dempsey that the property was delayed and was expected to be completed in four months. *See* **Exhibit 6** (Text Message from B. Dempsey to A. Poynton dated April 10, 2021). Despite this update and reassurance, Mr. Poynton still did not receive the new promissory note and deed of trust as promised.

19. According to Mrs. Dempsey's representations, the other property was expected to be completed in August 2021.

20. Four months later, in August 2021, the other property that Mrs. Dempsey was purportedly renovating had not been completed. Instead, on or about August 26, 2021, Mrs. Dempsey finally admitted in an email to Mr. Poynton that she had been in financial distress and default with another lender since October 2020, which was approximately one month before Mrs.

Dempsey requested that Mr. Poynton roll over his principal loan from the sale of 3129 38th St., N.W., to her alleged other property. *See* **Exhibit 7** (Email from B. Dempsey to A. Poynton dated August 26, 2021).

21. Mrs. Dempsey revealed at that time to Mr. Poynton that she had sold another property located at 3724 S St. N.W., Washington, D.C. 20007 ("3724 Property"), at a loss on February 18, 2021, for approximately $940,000.00. *See* Ex. 7.

22. Mr. Poynton was never told about the sale of Mrs. Dempsey's 3724 Property (let alone given any information about the property) until approximately 6 months after its sale and, further, Mr. Poynton was never repaid the principal loan amount that he had previously agreed to be used from the Property which successfully sold in November 2020.

23. In November 2020, Mrs. Dempsey intentionally concealed the fact that she was in default and financial distress and did not have Mr. Poynton's $100,000.00 to repay him because of other obligations. Thus, Mrs. Dempsey intentionally deceived Mr. Poynton to reloan his $100,000.00 for another purported property that she said she was renovating (*i.e.*, the 3724 Property). Such information was a material fact that Mrs. Dempsey intentionally concealed to induce Mr. Poynton to reloan her approximately $100,000.00.

24. Mr. Poynton would not have agreed to make an unsecured loan with full knowledge that Mrs. Dempsey was in clear financial distress.

25. To remedy the harm to Mr. Poynton and the lack of any formally executed note and deed of trust for the 3724 Property, which Mrs. Dempsey sold in February 2021, Mrs. Dempsey agreed to execute an unsecured promissory note in her name, individually, with Mr. Poynton, dated November 19, 2021.

26. Thus, on or about December 6, 2021, Mr. Poynton executed a promissory note (*i.e.*, the Note) for the amount of $100,000.00 with a maturity date of December 31, 2022. *See* **Exhibit 8** (Promissory Note dated December 6, 2021). Mrs. Dempsey executed the Note on November 29, 2021. The Note also provided that it "shall bear [Paid-in-Kind] interest in the amount of ten percent per annum (10%) from December 4, 2020, until the maturity date, but shall be forgiven in its entirety if [Mrs. Dempsey] repays this Note in full on or before the maturity date." *Id.*

27. Approximately 10 months after execution of the Note, in or around September 2022, Mr. Poynton communicated with Mrs. Dempsey and reminded her of the upcoming maturity date of the Note (December 31, 2022).

28. In or around September 2022, Mrs. Dempsey responded to Mr. Poynton's communication and acknowledged the approaching maturity date. During this communication, Mrs. Dempsey reassured Mr. Poynton that she would send a check on or before the maturity date for the full amount due and owing under the Note.

29. On December 31, 2022, Mrs. Dempsey did not remit the $100,000.00 due and owing under the Note or any interest and, thus, the Note went into default.

30. Mr. Poynton has attempted to contact Mrs. Dempsey on several occasions through text, email, and telephone since the maturity date to demand payment under the Note, to which he has received no response from her.

31. The maturity date under the Note has expired and, despite repeated demands for full payment of the $100,000.00 with interest, Mr. Poynton has not received the sums due and owing to date, including the 10% interest per annum owing on said Note.

32. As a result of Mrs. Dempsey's breach under the Note, Plaintiff has been harmed and seeks monetary relief, including compensatory damages, interest, reasonable attorneys' fees and costs.

## COUNT I
## BREACH OF CONTRACT – PROMISSORY NOTE
(Defendant Bonny Dempsey)

33. Plaintiff incorporates and adopts all preceding Paragraphs as if fully set forth herein.

34. On or about December 6, 2021, Plaintiff and Defendant executed a promissory note (*i.e.*, the Note) which matured on December 31, 2022, whereby Defendant agreed to pay the sum of $100,000.00 due and owing to Plaintiff, with 10% interest per annum from December 4, 2020, until the maturity date.

35. Defendant has not made any payments towards the sum of $100,000.00 due and owing under the Note since its execution, including any interest.

36. The maturity date of December 31, 2022 has passed and Plaintiff has yet to receive any payments towards the sum of $100,000.00, plus interest, due and owing under the Note from Defendant.

37. Defendant's failure to timely pay under the Note constitutes an event of default under the Note.

38. Defendant's failure to pay the sum of $100,000.00 with 10% interest per annum from December 4, 2020, until the maturity date, constitutes a clear breach of the Note. The interest on the principal sum of $100,000.00 from December 4, 2020, to December 31, 2022, at 10%, totals $122,136.93.

39. As a direct and proximate result of Defendant's breach of the Note, Plaintiff has sustained, and will continue to sustain, damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor against Defendant Bonny Dempsey, and an award of damages in in the amount of $122,136.93 for compensatory, plus reasonable attorneys' fees, pre- and post-judgment interest, costs, and all such other and further relief that this Court deems just and proper.

### COUNT II
### FRAUD
(Defendants Bonny Dempsey and MAD Development, LLC)

40. Plaintiff incorporates and adopts all preceding Paragraphs as if fully set forth herein.

41. In or about November 2020, Defendant Mrs. Dempsey, individually and on behalf of MAD Development, proposed that Mr. Poynton reloan her $100,000.00 to be used to renovate a new property with the same terms and conditions that had previously been executed between the parties in the past. Defendant Mrs. Dempsey conveyed to Plaintiff that she had another property in DC that she needed his money to complete which would be sold in January 2021.

42. To induce Plaintiff to reloan the principal loan amount of $100,000.00 into the new property, Defendant Mrs. Dempsey affirmatively misrepresented that she had a property that she had targeted for the funds and described the real estate market as "crazy strong." *See* Ex. 3. Mrs. Dempsey further concealed that she was in financial distress and default to other senior lenders since October 2020, and that she intended to use Mr. Poynton's money to cover her own losses, and she did not have the money to repay him.

43. Mrs. Dempsey did not reveal that she had been in financial distress until approximately August 26, 2021, nearly nine months after Plaintiff reloaned Defendants $100,000.00. *See* Ex. 7.

44. The representations and concealment by Defendant Mrs. Dempsey regarding her plans for a new property and the strength of the real estate market and the failure to disclose her

9

financial status at the time of her request to Plaintiff, were false, inaccurate, and/or misleading and concealed the true and accurate material facts from Plaintiff.

45. The foregoing concealment and omission constituted a failure by Defendants to disclose material facts, which they had a duty to disclose, truthfully and accurately.

46. The foregoing misrepresentations and concealment were made by Defendants for the purpose of defrauding Plaintiff and thereby inducing Plaintiff to reloan her $100,000.00.

47. Defendants made the foregoing misrepresentations and concealment intentionally, knowingly, willfully, and deliberately in order to induce the Plaintiff to reloan Defendants $100,000.00 for the 3724 Property.

48. The foregoing misrepresentations and concealment were done with the intent to mislead Plaintiff, who trusted Defendant Mrs. Dempsey to disclose accurate and truthful information at the time she requested that Plaintiff reloan Defendants $100,000.00 for the 3724 Property which was false.

49. The foregoing misrepresentations and concealment by Defendants were material to Plaintiff considering and ultimately agreeing to reloan Defendants $100,000.00 in or around November 2020.

50. Plaintiff reasonably and justifiably relied on Defendants' misrepresentations, conduct, and concealment, to induce him into agreeing to reloan the funds.

51. Defendants knew that Plaintiff would rely, and was relying, on Mrs. Dempsey's representations, conduct, and concealment as a knowledgeable, qualified, and savvy real-estate investor, and that Plaintiff would not have agreed to reloan Defendants $100,000.00 had the foregoing information been revealed by Defendants.

52. As a result of Defendants' misrepresentations and fraudulent concealment, Plaintiff has suffered, and will continue to suffer, damages by reloaning Defendants $100,000.00, plus interest, which was unsecured and, further, which was based on misinformation and a lack of knowledge of Mrs. Dempsey's prior and current financial distress.

53. Defendant's misrepresentations and fraudulent concealment were unlawful, intentional, made with malice, and intended to cause damage and loss to Plaintiff.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor against Defendant Bonny Dempsey, and an award of damages in $122,136.93 compensatory and punitive damages, to be determined at trial, plus reasonable attorneys' fees, pre- and post-judgment interest, costs, and all such other and further relief that this Court deems just and proper.

## COUNT III
## NELGIGENT MISREPRESENTATION
(Defendants Bonny Dempsey and MAD Development, LLC)

54. Plaintiff incorporates and adopts all preceding Paragraphs as if fully set forth herein.

55. In or about November 2020, Defendant Mrs. Dempsey, individually and on behalf of MAD Development, proposed that Mr. Poynton reloan her $100,000.00 to be used to renovate a new property with the same terms and conditions that had previously been executed between the parties in the past. Defendant Mrs. Dempsey conveyed to Plaintiff that she had another property in DC that she needed his money to complete which would be sold in January 2021.

56. To induce Plaintiff to reloan the principal loan amount of $100,000.00 into the new property, Defendant Mrs. Dempsey affirmatively misrepresented that she had a property that she had targeted for the funds and described the real estate market as "crazy strong." *See* Ex. 3. Mrs. Dempsey further concealed that she was in financial distress and default to other senior lenders since October 2020, and that she intended to use Mr. Poynton's money to cover her own losses.

57. Mrs. Dempsey did not reveal that she had been in financial distress until approximately August 26, 2021, nearly nine months after Plaintiff reloaned Defendants $100,000.00. *See* Ex. 7.

58. The representations and concealment by Defendant Mrs. Dempsey regarding her plans for a new property and the strength of the real estate market and the failure to disclose her financial status at the time of her request to Plaintiff, were false, inaccurate, and/or misleading and concealed the true and accurate material facts from Plaintiff.

59. The foregoing concealment and omission constituted a failure by Defendants to disclose material facts, which they had a duty to disclose, truthfully and accurately.

60. The foregoing misrepresentations and concealment were made by Defendants for the purpose of defrauding Plaintiff and thereby inducing Plaintiff to reloan her $100,000.00.

61. The foregoing misrepresentations and concealment were made by Defendants with the intent to deceive Plaintiff and thereby inducing Plaintiff to reloan her $100,000.00

62. Defendants made the foregoing misrepresentations and concealment intentionally, knowingly, willfully, and deliberately in order to induce the Plaintiff to reloan Defendants $100,000.00 for the 3724 Property.

63. The foregoing misrepresentations and concealment were done with the intent to mislead Plaintiff, who trusted Defendant Mrs. Dempsey to disclose accurate and truthful information at the time she requested that Plaintiff reloan Defendants $100,000.00 for the 3724 Property which was false.

64. The foregoing misrepresentations and concealment by Defendants were material to Plaintiff considering and ultimately agreeing to reloan Defendants $100,000.00 in or around November 2020.

65.     Plaintiff reasonably and justifiably relied on Defendants' misrepresentations, conduct, and concealment, to induce him into agreeing to reloan the funds to his detriment.

66.     Defendants knew that Plaintiff would rely, and was relying, on Mrs. Dempsey's representations, conduct, and concealment as a knowledgeable, qualified, and savvy real-estate investor, and that Plaintiff would not have agreed to reloan Defendants $100,000.00 had the foregoing information been revealed by Defendants.

67.     As a result of Defendants' misrepresentations and fraudulent concealment, Plaintiff has suffered, and will continue to suffer, damages by reloaning Defendants $100,000.00, plus interest, which was unsecured and, further, which was based on misinformation and a lack of knowledge of Mrs. Dempsey's prior and current financial distress.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor against Defendant Bonny Dempsey, and an award of damages in $122,136.93 compensatory damages, to be determined at trial, plus reasonable attorneys' fees, pre- and post-judgment interest, costs, and all such other and further relief that this Court deems just and proper.


Dated: February 17, 2023          Respectfully submitted,


                                   */s/ Stephen B. Stern*
                                  Stephen B. Stern, D.C. Bar No. 452589
                                  stern@kaganstern.com


                                   */s/ Jonathan P. Kagan\**
                                  Jonathan P. Kagan, *pro hac vice* pending
                                  kagan@kaganstern.com

13

                                                   */s/ Veronica J. Mina\**
                                                   Veronica J. Mina, *pro hac vice* pending
                                                   mina@kaganstern.com

                                                 KAGAN STERN MARINELLO & BEARD, LLC
                                                 238 West Street
                                                 Annapolis, Maryland 21401
                                                 Phone:       (410) 216-7900
                                                 Facsimile:  (410) 705-0836

                                                 *Attorneys for Plaintiff, Aaron Poynton*


      *Mr. Kagan and Ms. Mina are not admitted to the bar of the United States District Court for the District of Columbia, and Mr. Stern has filed simultaneous hereto, a Motion Pro Hac Vice for Mr. Kagan and Ms. Mina.

14